FERNÁNDEZ & CO. *v.* RAMÍREZ.

APPEAL from the District Court of Mayagüez.

No. 24.—Decided February 25, 1905.

MORTGAGE—FORECLOSURE PROCEEDING—PROCEDURE.—In a summary proceeding to foreclose a mortgage there should be filed with the complaint a certificate of the registrar, bearing date subsequent to the date upon which the obligation fell due, showing that such obligation has not been cancelled and that it is not pending cancellation, and including a literal copy of all the encumbrances affecting the mortgaged property and of all the conveyances thereof to third persons.

ID.—NOTIFICATION OF PERSONS INTERESTED IN SUBSEQUENT RECORDS.—If the certificate of the registrar shows the domiciles of the persons interested in the liability which may have been recorded subsequently to the right of the debtor, the judge shall, at the time of issuing the demand for payment, direct service of notice of the demand upon such interested parties at their domicile.

ID.—OBJECTION OF NOTIFICATION OF PERSONS INTERESTED IN SUBSEQUENT RECORD.—Notice of the order requiring the debtor to pay, served upon persons interested in the obligation recorded subsequently to the right of the execution creditor, is for the purpose of informing them of the proceedings in order that they may attend the public sale.

ID.—NOTIFICATION OF A FIRM—SPECIAL PARTNER—THIRD PERSON—NULLITY OF PROCEEDING.—Where a person has been served with notice of the order requiring the debtor to pay, as the managing partner of a mercantile firm, without protest, the fact that he was not such partner is not a defect which would render the proceeding void, provided it is shown that such person was a special partner, and although subsequently he became a creditor of said firm and the deed whereby he acquired that interest had not been recorded in the mercantile registry, for which reason he retained the capacity of special partner with respect to third persons with power to manage the business of the firm, the

notice is valid and binding, the presumption being that he made the facts known to the mercantile firm.

The facts are set forth in the opinion.

*Mr. Alvarez Nava,* for appellant.

*Mr. Eduardo Acuña,* for respondent.

MR. JUSTICE HERNÁNDEZ delivered the opinion of the court.

On January 2, 1903, Pedro E. Ramírez instituted before the District Court of Mayagüez, in accordance with the provisions of the Mortgage Law and the Regulations for its execution, summary proceedings for the recovery of a claim secured by a mortgage amounting to $2,919.10 encumbering an estate the property of José Y. Rivera.

The mortgaged estate was subject to an attachment for $885.31 in favor of the commercial firm of Fernández & Company, recorded in the registry of property subsequently to the mortgage credit of Ramírez, for which reason the latter expressly prayed in his initial complaint that at the same time demand for payment was made upon the debtor, notice of such demand be served on said company, as represented by José Antonio Fernández or any other managing partner thereof. The Mayagüez Court granted this petition and on March 2d of the same year notice of the demand was served upon Fernández as the manager of Fernández & Company, without his making any protest whatsover.

Subsequently, in the course of the same mortgage proceedings two public sales of the mortgaged estate were announced by means of notices published in the local press of Mayagüez, and it was awarded to Ramírez in payment of his claim, notice of such award being given to the firm of Fernández & Company, service being made on José A. Fernández as the representative of said company.

At the conclusion of the summary proceedings, the commercial firm of Fernández & Company brought an action in the District Court of Mayagüez, on October 9, 1903, against Pedro E. Ramírez seeking the annulment of the proceedings

had in the summary action prosecuted by Ramírez against Rivera from and after the date upon which the notice prescribed by article 171 of the Regulations for the execution of the Mortgage Law was to have been served on Fernández & Company as subsequent creditor, and that consequently the said summary proceedings should be brought back to the date mentioned, for the reason that prior thereto, that is to say, since February 21, 1902, José Antonio Fernández had sold, by public instrument, his entire share in the company as a member of the firm of Fernández & Co., a limited copartnership, to Francisco Crestar and Damián Fernández, managing partners thereof; and that in consequence hereof the notice mentioned had not been served on the company.

Pedro Ramírez filed his answer opposing the complaint and praying for its dismissal, alleging among other grounds that the plaintiff company had no right of action to demand the annulment sought, as a third person has not the necessary capacity to ask for the annulment of proceedings to which he was not a party, and that, furthermore, article 175 of the Regulations for the execution of the Mortgage Law grants only to third persons who consider themselves prejudiced the right to demand damages, provided such damages exist and are proved. This he alleges does not occur in the case at bar, both because notice was served on Fernández & Company and because the latter are simple creditors, Ramírez being a mortgage creditor; that the last paragraph of article 174 of said Regulations provides that when the certificates issued by a registrar of property shall show persons interested in the liabilities recorded after the claim of the plaintiff, the judge shall at the same time he issues the demand for payment, direct service of notice of such demand upon said interested persons at their homes, if there found, and, in view of this legal provision, it cannot be denied that service of the demand for payment was made on Fernández & Company, for the reason that Ramírez in his initial petition in these proceedings requested

that at the same time demand for payment were made, notice
of such demand be served on said company as represented by
José A. Fernández or any other of the managing partners
thereof; that the notice was served on José A. Fernández. in
the office of the secretary of the court of Mayagüez, for the
purposes of which José A. Fernández possessed the character
of manager of the firm of Fernández & Company, which char-
acter Fernández accepted upon signing the notice; that José
A. Fernández was known within and without the city of Maya-
güez on the dates upon which the service of notice of the
demand for payment on him was made on the date of the
award to Ramírez of the property sold as a member of the
firm of Fernández & Company, of which he had been for many
years the manager, liquidator and special partner and re-
cently a creditor. It is not strange, therefore, that Ramírez
should have requested the service of the demand for payment
in the manner he did, especially if, fearing that his informa-
tion might be incorrect, in which case the secretary should
have correctly informed him, he designated José A. Fernán-
dez or any of the other managers of Fernández & Company
for the service mentioned. Furthermore, the first sale of the
estate was announced three times in each of the local news-
papers of Mayagüez, *La Voz de la Patria,* and *El Correo,* and
notice of the second sale was also published three times each
in *La Bruja* and *La Opinión,* both local papers of said city..

The evidence presented by both parties shows: (1) That
the notice of the demand for payment was served in the
office of the secretary of the court of Mayagüez, on March 2,
1903, on José A. Fernández, as manager of Fernández &
Company, without any protests on his part. (2) That the
notices announcing the first sale were published in the afore-
mentioned newspapers of Mayagüez. (3) That notice of the
award of the property sold at action was also served on José
A. Fernández. (4) That Fernández, in conjunction with
others, by public deed executed on January 2, 1895, organized

a commercial special co-partnership under the name of Fernández & Company, the special partners being Ramón García Barreras and José A. Fernández, and the managing partners Francisco Crestar and Damián Fernández, it being stipulated that the special partners could at any time interfere to see that the business was properly conducted and, if necessary, make any suggestions tending to the progress of the company, the administration and managment thereof to be in the hands of the managing partners, the special partners García Barreras and Fernández having charge, as they theretofore had, of the liquidation of the firms of Barreras y Fernández and Fernández & Company, which partnerships had been dissolved. (5) That by another public instrument dated March 27, 1899, the heirs of Ramón García Barreras, deceased, and Francisco Crestar, José A. Fernández and Damián Fernández agreed to dissolve the co-partnership of Fernández & Company. In the same instrument another special partnership was entered into by José A. Fernández, Francisco Crestar and Damián Fernández, in which the last two mentioned were to be the managing partners, the first named a special partner, and all three liquidators of the dissolved firm of Fernández & Company: The special partner, José A. Fernández, was given the right to participate in the managment to the extent of seeing that the business was properly conducted, and to make any suggestions necessary tending to the progress thereof. (6) That by another public instrument dated February 21, 1902, José A. Fernández sold to Francisco Crestar and Damián Fernández his share in the liquidations of the firms dissolved and in the existing firm of Fernández & Company for the sum of $30,000, of which he acknowledged having received $2,000 from the hands of the purchasers, the latter agreeing to pay the remaining $28,000 in various instalments, the last one falling due in 1909. (7) That the firm of Fernández & Company, organized on February 21, 1902, by Francisco Crestar and Damián Fernández, was not recorded in the mercantile regis-

ter. (8) That the record of a civil oral action brought by Tomás Rivera against José A. Fernández contains the copy of a letter addressed by Fernández to Rivera on May 30, 1903, written on business letter paper with the following letterhead: "Fernández y Comp., 29—Suau—29. *Dirección Telegráfica:* Fernández.—Mayagüez, P. R.''—(9) That upon an examination of Pablo E. Medina, clerk of the Mayagüez court and José Antonio Caroli, secretary of the municipal court of said city, the former stated that while Fernández was in the office of the secretary he had served upon him the notice of the demand for payment, in the belief that Fernández was the managing partner of the commercial firm mentioned, in which capacity he signed the notice without making any objection whatsoever; and the latter, Caroli, stated that he went to the establishment of Fernández & Company for the purpose of serving the notice of the order of award and found Damián Fernández, a partner, who refused to sign said notice requesting Caroli to wait a moment until José A. Fernández arrived, because the order directed that service should be made on José A. Fernández or any of the managing partners of Fernández & Company; that Fernández arrived shortly afterwards and accepted service as the manager of the said commercial firm, without making any objection whatsoever. (10) That the witnesses Pablo Roig Torrellas, editor of the newspaper *La Bruja,* and Tomás Ramírez, an employe of the newspaper *La Voz de la Patria,* testified that Fernández & Company were subscribers to said newspapers.

The District Court of Mayagüez, by judgment of February 16 of last year, dismissed the complaint brought against Pedro E.Ramírez, taxing the costs against Fernández & Co., and from this judgment the plaintiff took an appeal, which was allowed. Both parties entered an appearance in this Supreme Court, the hearing of the appeal being had with the attendance of counsel for the respondent only.

The facts appearing in the record having been set forth,

let us now proceed to examine the legal question of the nullity of the summary proceedings instituted by Pedro E. Ramirez against José Y. Rivera for the recovery of money secured by mortgage.

Article 169 of the Regulations for the execution of the Mortgage Law provides that together with the initial petition in compulsory proceedings there must be presented, among other documents, a certificate issued by the registrar of property of a date subsequent to the date of the maturity of the obligation, stating that the mortgage charge is not cancelled and that its cancellation is not pending according to the journal. Said certificate must contain also a true copy of the records of any other rent charges (*censos*), mortgages and other charges to which the mortgaged property may be subject, as also the records of the conveyance of such property to third persons. The following article provides in its last paragraph that when the certificates issued by the registrar of property show the domiciles of the persons interested in the liabilities which may have been recorded subsequently to the right of the debtor, the judge shall at the time of issuing the demand for payment, direct service of notice of the demand upon such interested persons at such domiciles, if they should there be found.

The purpose of serving notice of the order mentioned is to permit such persons interested to attend the public sale should they so desire, as may be inferred from the second paragraph of article 172 of said Regulations.

Notice of the order directing demand for payment with respect to José Y. Rivera was served on José A. Fernández, as the manager of the commercial firm of Fernández & Co., and in such capacity he accepted service without any protest whatsoever against the representation attributed to him.

It is true that it is established by the record that José A. Fernández was not a managing partner in the firm of A. Fernández & Co., but this circumstance cannot in this case vitiate

the compulsory proceedings brought by Pedro E. Ramirez against José Y. Rivera, because Fernández, according to the certified copies of public instruments made a part of the record, was first a special partner and then a creditor of Fernández & Co. and as a special partner, in which position he stands with respect to third persons, owing to the failure to record in the mercantile registry the instrument of February 21, 1902, which converted him into a creditor, was empowered to interfere to see that the business was properly conducted and to suggest in a necessary case anything tending to the progress of the business of the company; hence, it is to be presumed that Fernández informed Fernández & Co. of the notice which had been served on him; and this presumption becomes still stronger if it be considered that the relations of Fernández with Fernández & Co. were very close as shown by the fact that he used letterheads of said firm in writing his letters, and if it be considered that he was in said establishment when given notice as the manager of Fernández & Co. of the order of adjudication of the property sold. This service was agreed to by Damián Fernández, managing partner of said company, as may be deduced from the testimony of José Antonio Caroli.

Furthermore, the public sale was announced in newspapers to which Fernández & Co. were subscribers, and this consideration, together with those above set forth, impress upon the court the legal conviction that Fernández & Co. had information of the demand for payment and the sale of the property mortgaged in favor of Ramírez, and that if they failed to attend the sale it was because they did not wish to do so, or it did not suit their interests, and never because they were ignorant of the existence of the compulsory proceedings instituted to recover on property mortgaged in favor of Ramírez, and subsequently attached for the payment of a personal credit in favor of the said company.

For the reasons stated, the judgment rendered by the Dis-

trict Court of Mayagüez on February 16 of last year, dismissing the complaint against Pedro E. Ramírez, with the costs against Fernández & Co., is affirmed, the costs in this appeal being also taxed against said firm.

*Affirmed.*

Chief Justice Quiñones, and Justices Figueras, MacLeary and Wolf concurred.